In the Matter of the Judicial Settlement of the Account of IRVING W. WISWALL, as Executor, etc., of GEORGE W. PEEK, Deceased, and of the Judicial Construction of Said Will.

Surrogate's Court, Saratoga County, February 28, 1928.

Wills — construction — trusts — devise of property in trust with direction to divide net income at least annually and pay one-fifth part to each of five named beneficiaries — upon death of each beneficiary one-fifth part of principal was to be given to named remaindermen — part of principal was authorized to be used if necessary for one beneficiary — separate and valid trusts were created — income payable during first year while property was in hands of executors — executor-trustee acts in both capacities — real and personal property to be treated as one fund — question as to rights of remaindermen prematurely raised — sale of real estate by advertisement and sealed bids was public sale — executor acted in good faith and account not surcharged for error in judgment — executor entitled to expenses in preparation for contest which was withdrawn — form of account not proper — no intent that real property should be held for occupancy by one legatee.

The will of the testator devised all his property, both real and personal, to trustees in trust with directions to invest the same and divide the net income at least annually into five equal parts and to pay one part to each of five named beneficiaries. It also provided that upon the death of each beneficiary the trustees should pay over one-fifth part of the principal to certain named remaindermen. And in reference to one beneficiary it provided that in case one-fifth part of the income was not sufficient to support her the trustees should use such portion of the one-fifth part of the principal as might be necessary for that purpose.

Surrogate's Court, Saratoga County, February, 1928.        [Vol. 131

Separate and individual trusts were created and, therefore, the trust provisions of the will are valid.

The beneficiaries are entitled to have the net interest or income computed from the date of the death of the testator and not from one year after his death, for it appears that the trusts were created for the support and maintenance of the beneficiaries and consequently the beneficiaries are entitled to have the income paid to them for the year immediately following the testator's death.

The executor who is also one of the trustees must be considered as having powers not alone executorial but also in the nature of a trustee, so far as the administration of the estate is concerned and for the purpose of paying over the income for the year following the death of the testator.

Since the testator has made no distinction so far as the trust fund is concerned, as to real and personal property, the proceeds of the real estate together with the personal property constitute one fund.

Under the construction given to the will it is not necessary for the trustees to divide the principal into five equal parts and invest each part, but the trustees may invest the entire amount as one fund.

The question as to the rights of the remaindermen in the remainder is prematurely raised.

The sale of the real property was a public sale, although the procedure was somewhat unusual. It appears that the executor advertised the real property for sale, and also distributed printed copies of the advertisement to many people whom he thought might be interested in the sale, and that the sale was made to the person presenting the highest sealed bid.

While the subsequent events may show that it would have been better to have sold the property at some other time, still it appears that the executor acted in entire good faith and with a purpose of securing the highest price, and, therefore, although his judgment may have been poor, his account will not be surcharged.

The executor is entitled to be allowed the expense incurred in preparing to defend a contest of the will notwithstanding that the contestant withdrew before the contest came to trial, for there is no doubt that a *bona fide* contest was threatened.

The account of the executor is not in proper form in that it does not separately state the income which it was conceded on the accounting is to be distributed to the beneficiaries.

There is no intent shown in the will that the real property should be retained for the occupancy of one of the legatees.

PROCEEDING for the judicial settlement of the account of the sole executor named in the codicil to the will and for a construction of the 2d and 3d paragraphs of the will, and for a judicial determination of certain questions which are claimed to be raised by reason of the language of the will.

*Corliss Sheldon,* for the executor Irving W. Wiswall.

*Horace E. McKnight,* for James A. Peek.

*Schwarte, Slade & Harrington* [*John A. Slade* of counsel], for George A. Peek and Juliette Peek.

*Spencer B. Eddy,* special guardian.

TUCK, S. The 2d and 3d paragraphs of the will read as follows:

Misc. 495]    Surrogate's Court, Saratoga County, February, 1928.

" *Second.* I give, devise and bequeath to Albert E. Knight, Irving W. Wiswall and Fred G. Selch as Trustees, all of my estate, both real and personal and wheresoever situate, In Trust, nevertheless, to be controlled, used and disposed of in the following manner, to wit:

" I direct that they take said estate and keep it invested, if in personal property at the best rate of interest obtainable with safety to the principal, and if in real estate they keep it rented at the best terms possible, keeping the real estate in good repair, and that out of the net income derived from said property, after all expenses are deducted, they divide the net balance, at least annually into five equal parts, paying one part to each of my surviving children, Samuel H. Peek, George A. Peek, Clara Peek, James Arthur Peek, Emma P. Copenhaven, during the lifetime of each of said five children.

" At the death of Samuel H. Peek I give, devise and bequeath the one-fifth part of my estate to my three grandchildren, or the survivor or survivors of them, being the children of said Samuel H. Peek.

" At the death of George A. Peek, I give, devise and bequeath the one-fifth part of my estate to my seven grandchildren, or the survivor or survivors of them, being the children of said George A. Peek.

" At the death of James Arthur Peek, I give, devise and bequeath the one-fifth part of my estate to my three grandchildren, or the survivor or survivors of them, being the children of said James Arthur Peek.

" At the death of Emma P. Copenhaven, I give, devise and bequeath the one-fifth part of my estate to my three grandchildren, or the survivor or survivors of them, being the children of said Emma P. Copenhaven.

" In the matter of the share of Clara Peek, in case the income which may be coming to her shall be insufficient to properly support her in the manner in which I have been supporting her, then I authorize my trustees to use so much of the one-fifth of the principal as may be necessary to so support her, and at her death I give, devise and bequeath so much as may be remaining of said one-fifth share to my seventeen grandchildren now living (including Clarence Lambertson) or to the survivors of them at such time, share and share alike.

" *Third.* I authorize and empower my Executor hereinafter named to sell and convey by good and sufficient deed of conveyance any or all of my real estate, at public or private sale at the best prices obtainable, and turn the proceeds over to said Trustees,

and any real estate not so sold at the expiration of his term as Executor I direct him to convey by Executor deed to said Trustees for their use as above describe d."

It appears that the five children named as beneficiaries of the trust provision in the will all survived the testator. The trust created by the will is one by which the testator contemplated the holding of the funds or property of the trust estate *in solido*, but it is the opinion of this court that separate and individual trusts are created by the language of the will.

In *Leach* v. *Godwin* (198 N. Y. 35) is laid down the rule that where a trust for the benefit of several persons is held in one fund, it is necessary for the purpose of holding that there are separate and independent trusts, that each part of the principal fund be liberated from the trust fund upon the termination of the lives in being at the date of the testator's death, and that it is also necessary to find from within the will itself that such was the intention of the testator.

This design in conformity with the precept so laid down in that case is very apparent from the language of the will itself, and particularly from that paragraph of the will which reads: " In the matter of the share of Clara Peek, in case the income which may be coming to her shall be insufficient to properly support her in the manner which I have been supporting her, then I authorize my trustees to use so much of the one-fifth of the principal as may be necessary to support her, and at her death   *   *   *."

The first question raised in the petition for construction is: Are testator's five children entitled to have the net interest or income from the whole of testator's estate computed from the date of his death, or is such income to be computed from one year after his death, and if any such income is to be paid for the one year immediately following the testator's death, then should such income be paid by the executor or by the trustees?

By reference to the language above quoted in relation to the share of Clara Peek, it is evident that the trust was created for support and maintenance, and consequently the beneficiaries are entitled to have the income paid to them for the year immediately following the testator's death.

The executor, who is also one of the trustees, must be considered as having powers not alone executorial but also in the nature of a trustee, so far as the administration of the estate is concerned, and for the proper execution of the will according to the intent of the testator so far as the distribution of the income upon the estate is concerned for the year immediately succeeding the testator's death.

Misc. 495]     Surrogate's Court, Saratoga County, February, 1928.

The testator has made no distinction so far as the trust fund is concerned, as to real or personal property, but has constituted both the realty and the personalty in one fund with the direction for the payment of the net income after all expenses are deducted, and undoubtedly the proceeds of the sale of the real estate, together with the personal property, should be treated as one fund.

The third question raised: " Is it the trustees' duty to hold the trust estate including the said avails of the sale of the real estate as one entire and undivided trust fund and to pay expenses therefrom before making any division of the income or principal thereof to the beneficiary?   Or is it the duty of the trustees to immediately divide the principal into five parts and create and maintain five separate and distinct trust funds for the benefit of the respective beneficiaries? "   These questions seem to be answered by the construction which we have hereinbefore indicated.

The succeeding fourth, fifth, sixth, seventh and eighth questions relate to the distribution of the shares of Emma Copenhaven, Samuel H. Peek, George A. Peek, James Arthur Peek and Clara Peek, upon the death of these persons respectively.

The precise language of the will in relation to the shares of each of these persons is: " At the death of Samuel H. Peek," etc., and it would seem these questions are prematurely raised in this proceeding, and that the determination as to the persons to whom these various shares of principal should be distributed must await the happening of the event and then be distributed according to the language of the will to the persons who at that future time may appear to be entitled.

The 3d paragraph of the will reads as follows:

" *Third.* I authorize and empower my executor hereinafter named to sell and convey by good and sufficient deed of conveyance any or all of my real estate at public or private sale at the best prices obtainable and turn the proceeds over to said trustees, and any real estate not so sold at the expiration of his term as executor I direct him to convey by executor's deed to said trustees for their use as above described."

The executor in the course of his administration of the estate proceeded to sell the real estate acting presumably under the power given by the will.   He published a notice of the sale substantially describing the farm and setting out the advantages of the property in its location and in other respects.   The executor was to receive sealed bids for the property and the property was bid in by a purchaser for the sum of $3,850, which he bid.   During the period of ten days after the first publication of the notice of sale the executor circulated printed copies of the advertisement printed

in the newspaper among all the persons interested under the will of the decedent, and also among the real estate dealers of the neighborhood, and among many of the residents in the vicinity and called the attention of various persons whom he believed might be likely prospects to the property.

It is claimed by George A. Peek that the method of sale adopted by the executor was neither a public nor a private sale but a hybrid combination of public or private sale by which the property was sold at a very great sacrifice from its real value.

During the trial witnesses were sworn by the executor and the contestant as to the value of the real estate, including the wood or timber on the property, and these estimates present such broad differences as to be incapable of reconciliation.

Witnesses for the contestant, with one exception, appear to base their estimate of values to some extent, if not quite completely, upon the possibilities of the property for development. One witness for the contestant, who did not consider this possibility, estimated the value of the property at $5,500. The witnesses for the executor estimate the value of the property at from $3,500 to $4,000.

There is some evidence of sales of property in the neighborhood which appear to have been made at prices more advantageous than the price realized for the sale of the property in question.

The method of sale, while not entirely novel, was nevertheless somewhat unusual, and would seem at first blush to lack the element of protection to the executor that the usual public sale affords and to forego the advantages of a private sale by which ordinarily better prices for property are obtained. This method of sale, however, is not without sanction in judicial administration. (See *Matter of Nevada-Utah Mines & Smelters Corp.*, 198 Fed. 497.)

Judge HAND, in the case cited, where real property was sold in bankruptcy proceedings, has defined a public sale. He says: " I think, on the whole, it was a public sale. The advertisement contained a proposal to all bidders to come in and make their bids on the day in question, and the notice was advertised as freely as was necessary, or, at least, as much as the court thought necessary. The property was struck down to the only bidder. There is no suggestion that further publicity would have produced another bidder, and, indeed, from all of the facts, there is no reason to suppose that any better bid could have been had. It is quite true that the sale does not conform with rule 17 of the local rules of this court, in that it was not sold by the auctioneer, and in the absence of a conspicuous notice in front of the premises two days

before the sale. These are matters, however, which are not jurisdictional, and an order of this court dispensing with them is not invalid. What, then, is a public sale? I think it is no more than this: That all persons shall have the right to come in and bid, that the bids shall not be held open, except with the bidders' consent, and that notice shall be given publicly at which all bids are invited. All this was done in the case at bar, and I know of no reason why the sale should not take place at the same time at which the referee directs a sale, provided all necessary publicity is given, and every opportunity to those who wish to come in and bid. Neither the statute nor the rules prescribe how a public sale shall take place, and there is no necessity of an auction sale."

It remains then to determine whether or not the sale was made by the executor in good faith and without negligence. From the proofs it appears that the executor diligently circulated the notices of sale; that he did not neglect to bring the property to the notice of all prospective buyers in and about the locality, and that all of the beneficiaries under the will had notice of the sale and an opportunity to bid for the property.

It may be and it seems quite possible that there was a mistake of judgment in effecting a sale of the real estate at the time chosen by the executor. This would seem to be borne out to some extent by the record of certain other sales in the neighborhood. The executor should not be surcharged, however, where he acted in good faith and with diligence even though there may have been an error of judgment, nor should he be denied commissions in such case. (*Matter of Garrabrant*, 176 App. Div. 186.)

During the course of the proceeding the executor filed an amended account and also submitted a claim for services rendered in the will contest and for disbursements in connection therewith aggregating a sum of $775. Objection was made by the contestant to the allowance of the amendment, which, however, was overruled and the executor was permitted to prove the items of services making up the amount of his bill. The contest over the probate of the will never reached the trial court, but the case was on the calendar and at or about the time it was called contestant's allegations were withdrawn. There seems no doubt that a *bona fide* contest was threatened. It was the duty of the executor to use every reasonable effort to establish the will of the testator and the services performed by him as outlined in his verified claim and by his testimony appear to have been reasonable and proper and the court believes are properly allowable to him upon this settlement of his account. (*Matter of Fraser*, 165 App. Div. 441; *Douglas* v. *Yost*, 64 Hun, 155; *Matter of Ogden*, 41 Misc. 158.)

The claim of the executor for such service upon the probate of the will is allowed at $775.

A further objection is made as to the form of the executor's account. It does not separately state the income, which it was conceded on the accounting is to be distributed to the five *cestui que trust*. An examination of the account concludes the court that this objection should be sustained.

Contestant's counsel has maintained during the proceeding that the provisions of the testator's will evidence a design on the part of the testator to make some provision for the occupation of the premises for his sister Juliette Peek who was born and resided on the premises during her entire life. The court is unable to conclude from a close examination of the will that such was the intent of the testator. It seems more reasonable to conclude that it was the intent of the testator that the real estate should be sold at a time when it could be sold to greatest advantage and that to accomplish this purpose he gave a power of sale to the executor and a direction to the executor in case the real estate was not sold to convey the real estate to his trustees, to whom he gave a power of sale for purposes of distribution.

Submit a separate statement of income as above indicated and a decree upon notice to all parties appearing in accordance herewith.